UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE GENESIS MARINE, LLC                                        CIVIL ACTION

                                                                 NO. 24-2881

                                                                 SECTION: "G"(2)

ORDER AND REASONS

Before the Court is Claimant Brandon Darrow's ("Darrow") Motion for Summary Judgment on the issue of timeliness of the limitation complaint filed by Limitation Petitioner Genesis Marine, LLC ("Genesis").[1] In Darrow's motion, he argues the limitation action filed by Genesis was untimely considering it was filed more than six months after Genesis admitted there existed a reasonable possibility Darrow's damages would exceed the value of Genesis's vessel, the M/V ANACONDA.[2] Genesis counters by asserting it made no judicial admission of the potential value of Darrow's damages, and Darrow did not provide any indication damages could exceed the vessel's worth until mid-2024, making the limitation action filed in December 2024 timely.[3] After reviewing the motion, the memoranda in support and opposition, the applicable law, and the record, this Court grants summary judgment in favor of Darrow.

---

[1] Rec. Doc. 11.

[2] *See* Rec. Doc. 11-1.

[3] *See* Rec. Doc. 24.

1

## I. Background

This case arises out of Genesis's Complaint for Exoneration from or Limitation of Liability ("limitation action") filed on December 13, 2024.[4] Genesis claims the limitation action was "filed within six months from the date [Genesis] received first written notice of a limitable claim because in August 2024, Darrow made a settlement demand of $22,000,000."[5] Genesis further asserts the value of its vessel interest on the date of the accident, reflected in the M/V ANACONDA and Barges GM 1006 and GM 5040, did not exceed the sum of $12.5 million.[6] Based on the limitation action and claims made within, this Court issued an Order Approving Genesis's Security and Ad Interim Stipulation and Directing Issuance of Notice to Claimants and Restraining Prosecution of Claims.[7]

On February 14, 2025, Darrow filed an Answer and Claim in Limitation.[8] On February 18, 2025, Darrow filed this Motion for Summary Judgment on the Timeliness of Genesis's limitation action.[9] On February 19, 2025, Genesis filed a Motion to Continue the Submission Date of the Motion for Summary Judgment,[10] which was denied by this Court on February 20, 2025.[11] Genesis filed its Opposition on February 25, 2025.[12] Darrow filed his Reply on March 3,

---

[4] Rec. Doc. 1.

[5] *Id.* at 3.

[6] *Id.* at 4.

[7] Rec. Doc. 7.

[8] Rec. Doc. 10.

[9] Rec. Doc. 11.

[10] Rec. Doc. 12.

[11] Rec. Doc. 19.

[12] Rec. Doc. 24.

2025.[13]

## II. Parties' Arguments

*A.    Darrow's Arguments in Support of his Motion*

In his Motion, Darrow argues the evidence "establishes Genesis received written notice of a claim subject to limitation reasonably possibly exceeding its vessel interest well over two years prior to its December 13, 2024, filing" of this limitation action.[14] Because Genesis received this written notice more than six months before filing the limitation action, Darrow asserts Genesis's limitation action was untimely.[15] Darrow asserts Genesis's December 13, 2024, limitation action "can only be deemed timely if it did not receive written notice sufficient to apprise it of a reasonable possibility of a claim exceeding the vessel's value until sometime in the six months preceding its federal court filing—*i.e.*, sometime after June 13, 2024."[16]

Darrow claims Genesis cannot deny it had definitive written notice of Darrow's personal injury claim and that the claim had a reasonable possibility to exceed Genesis's vessel interests long before June 13, 2024.[17] Darrow submits he filed his original state court Petition for damages on December 23, 2021, and it served on Genesis through its registered agent on January 19, 2022.[18] Darrow represents he filed a Supplemental and Amended Petition for Damages on July 12, 2022 and it was served on July 18, 2022.[19] Darrow argues, even though the Petition did not

---

[13] Rec. Doc. 34.

[14] Rec. Doc. 11-1 at 16.

[15] *See id.*

[16] *Id.* at 17.

[17] *Id.*

[18] *Id.*

[19] *Id.*

include a specific statement of damages sought,[20] Darrow outlined he could not return to work due to Genesis's negligence and the vessel's unseaworthiness.[21] Crucially, Darrow points to a sentence in Genesis's Answer, filed in state court on August 8, 2022, which reads:

> [T]he amount of damages sued for in the Petition herein greatly exceeds the amount or value of Genesis's interests in the M/V ANACONDA, and her freight then pending, if any; Genesis accordingly invokes the benefits of the provisions of the Revised Statutes of the United States of America and the acts amendatory thereof and supplemental thereto in limitation of the liability of shipowners.[22]

Darrow claims this statement is a "judicial admission," putting the question beyond contention.[23] Darrow claims the statement meets the criteria to qualify as a judicial admission, as the statement was: "(1) made in a judicial proceeding; (2) contrary to a fact essential to the theory of recovery; (3) deliberate, clear, and unequivocal; (4) such that giving it conclusive effect meets with public policy; and (5) about a fact on which judgment for the opposing party can be based."[24] Considering these factors, Darrow contends Genesis's statement that the damages "greatly exceed" the value of the vessel owner's interest should be found to have started the six month clock for Genesis to file a limitation action.[25] Darrow contends the six month clock started to run the day the Answer was filed, which was August 8, 2022, making Genesis's December 13, 2024, limitation action untimely.[26]

Darrow states, even if Genesis's statement in the Answer is not considered dispositive,

---

[20] *See id.* at 18.

[21] *Id.* at 19.

[22] *Id.* (citing Rec. Doc. 11-27 at 4).

[23] *Id.* at 20–21.

[24] *Id.* at 20 (citing *Jonibach Mgmt. Trust v. Wartburg Enter., Inc.*, 750 F.3d 486. 491 n.2 (5th Cir. 1990)).

[25] *Id.* at 22.

[26] *See id.*

the record is "replete with incontrovertible evidence establishing Genesis's six-month time bar was triggered long before June 13, 2024."[27] According to Darrow, Genesis "extensively litigated" this case and was "indisputably" aware of how severe Darrow's injuries were, including his permanent disability, multiple surgeries, young age and substantial loss of future earning capacity, future surgeries, psychological symptoms, and substantial pain and suffering, among other injuries.[28]

### B.   *Genesis's Arguments in Opposition to the Motion*

In Opposition, Genesis argues, at minimum, there is a genuine factual dispute regarding when Genesis was first put on notice that Darrow's claim might reasonably exceed the value of the interest Genesis had in the M/V ANACONDA.[29] Genesis argues the first time it was aware Darrow could reasonably claim more than the value of the vessel was on August 21, 2024, when Darrow demanded Genesis pay over $20 million to settle the case, which was over the value of the vessel at $12.5 million.[30] Genesis asserts, because August 21, 2024, was the first time Genesis was aware of a "reasonable possibility" of Darrow's claim exceeding the value of the vessel, Genesis's December 13, 2024, limitation action was timely because it was within the six month window.[31]

Genesis argues its statements in the Answer that Darrow cites were "boilerplate" affirmative defense raised in state court and simply an allegation, not a judicial admission that

---

[27] *Id.* at 23.

[28] *Id.* at 25.

[29] Rec. Doc. 24 at 9.

[30] *Id.* at 10.

[31] *See id.* at 11.

can be used as evidence to support summary judgment.[32] Genesis avers a judicial admission is a "formal concession in the pleadings or a stipulation by a party or counsel that is binding on the party making it[,]" arguing the statement is not binding on Genesis.[33] Genesis claims judicial admissions can only be found in the case in which they are made, and the statement at issue was raised in a separate suit in state court.[34] Genesis further argues an affirmative defense cannot be a "judicial admission because it is not a factual assertion with the effect of withdrawing a fact from contention."[35] In fact, Genesis argues, because limitation of liability is a legal theory, it is not a fact that can be admitted or waived at all.[36]

Lastly, Genesis contends, until August 2024, nothing in Darrow's state court pleadings or discovery or medical documentation gave rise to a reasonable possibility that his claims might exceed $12.5 million, the value of the vessel.[37] At minimum, Genesis maintains, there is a genuine dispute of material fact on the issue of when Genesis first received written notice giving rise to the reasonable possibility that Darrow's claim could exceed $12.5 million, and, considering it is a fact-intensive inquiry, the question should not be handled at the summary judgment stage.[38]

## C.    *Darrow's Arguments in Reply to Genesis's Opposition*

In Reply,[39] Darrow points out Genesis admits it specifically stated in its answer on August

---

[32] *Id.* at 12.

[33] *Id.* at 13 (citing *Mays v. Dir., Off. Of Workers' Comp. Programs*, 938 F.3d 637, 647 (5th Cir. 2019)).

[34] *Id.*

[35] *Id.* at 15 (citing *Blankenship v. Buenger*, 653 F.App'x 330, 335 (5th Cir. 2016)).

[36] *Id.* at 16.

[37] *Id.* at 17.

[38] *Id.* at 19–20.

[39] Rec. Doc. 34.

8, 2022, that the amount of damages greatly exceeded the value of Genesis's interest in the M/V ANACONDA.[40] Darrow asserts Genesis was required to state material facts upon which its defenses to Darrow's claims were based, and thus, Genesis was making an admission of material fact when it stated the amount of damages greatly exceeds the value of the vessel.[41] Darrow claims Genesis "made this factual statement deliberately and benefitted from this defense because Louisiana state courts exercise jurisdiction to determine limitation of liability."[42] Darrow claims Genesis fully intended for the state court to decide the limitation of liability question if the case went to trial there.[43] Darrow avers Genesis cannot have it both ways.[44] That is, Darrow argues Genesis cannot expressly state Darrow's damages greatly exceeded the value of the vessel in state court but claim later, here in federal court, it did not have notice the claim had a reasonable possibility to exceed the value of the vessel.[45]

Darrow then discusses *Vatican Shrimp Co., Inc. v. Solis*, in which Darrow argues the Fifth Circuit recognized Congress's six-month time bar as a policy aimed at avoiding "abusive litigation tactics and circuitous action by shipowners[.]"[46] Darrow further argues *Vatican Shrimp* stands for the proposition that when a vessel owner's state court answer raises limitation of liability, there is "no question that the vessel owner failed to comply with the six-month time

---

[40] *Id.* at 1.

[41] *Id.*

[42] *Id.* at 2.

[43] *Id.*

[44] *Id.*

[45] *Id.*

[46] *Id.* at 3 (citing *Vatican Shrimp Co., Inc. v. Solis*, 820 F.2d 674, 682 (5th Cir. 1987)).

bar."[47] Darrow asserts these holdings have never been overruled as Genesis claims.[48]

Darrow further argues there is no genuine dispute of material fact on the issue of whether Genesis had written notice of a reasonable possibility that Darrow's claim might exceed the value of the vessel.[49] Darrow claims Genesis's subjective beliefs and self-serving statements are not enough to demonstrate Genesis did not have notice of a claim with a reasonable possibility of exceeding the vessel's value.[50]

Darrow points out, on June 24, 2021, Genesis was aware of Darrow's two prior failed back surgeries and the need for a third, that it was aware of "foot drop and incontinence," and it was aware Darrow urgently needed a lumbar fusion because he was at risk of bilateral leg paralysis, bowel, bladder, and sexual dysfunction.[51] Darrow points to other opinions and surgeries Genesis was aware of between 2021 and 2023.[52] Darrow points to the expert report produced on January 29, 2024, which made Genesis aware of the need for spinal cord stimulation surgeries every 5–7 years for the rest of Darrow's life, as well as other surgeries and rehab and Darrow's likely complete loss of his maritime career and substantial loss of future earning capacity.[53] Darrow argues Genesis knew Darrow was permanently disabled in April 2024 when Darrow's treating physician, Dr. Jagar, was deposed.[54] Darrow claims Genesis's assertion that the August

---

[47] *Id.* (citing *Vatican Shrimp*, 820 F.2d at 679).

[48] *Id.*

[49] *Id.* at 4.

[50] *Id.*

[51] *Id.* at 5.

[52] *Id.* at 5–6.

[53] *Id.* at 6–7.

[54] *Id.* at 7.

8

21, 2024, demand was the first time Genesis had written notice of a reasonable probability of the damages exceeding the value of the vessel is "sleight of hand to distract from the fact that Genesis knew all along that the value of the claims exceeded vessel interests as admitted in its answer years earlier[.]"[55] Darrow maintains his belief that allowing Genesis to successfully file their limitation action at this juncture would "directly contravene[] Congress's intent of the six-month time bar."[56]

### III. Legal Standard

#### A. *Summary Judgment*

Summary judgment is appropriate when the pleadings, discovery, and affidavits demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[57] To decide whether a genuine dispute as to any material fact exists, the court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[58] All reasonable inferences are drawn in favor of the nonmoving party.[59] Yet "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[60] If the entire record "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and, consequently, the moving party is entitled to judgment as a

---

[55] *Id*.

[56] *Id.* at 10.

[57] Fed. R. Civ. P. 56(a); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[58] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008) (citing *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000)).

[59] *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Reeves*, 530 U.S. at 150).

[60] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

matter of law.[61] The nonmoving party may not rest upon the pleadings.[62] Instead, the nonmoving party must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[63]

The party seeking summary judgment always bears the initial responsibility of showing the basis for its motion and identifying record evidence that demonstrates the absence of a genuine issue of material fact.[64] "To satisfy this burden, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element of the opponent's claim or defense."[65] If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to "identify specific evidence in the record, and to articulate" precisely how that evidence supports the nonmoving party's claims.[66] The nonmoving party must set forth "specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."[67]

The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory

---

[61] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cites Serv. Co.,* 391 U.S. 253, 289 (1968)).

[62] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[63] *See id.*; *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[64] *Celotex Corp.*, 477 U.S. at 323.

[65] *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991) (internal citation omitted).

[66] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

[67] *Morris*, 144 F.3d at 380; *see also Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012).

allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[68] Moreover, the nonmoving party may not rest upon mere allegations or denials in its pleadings.[69]

## B. *Limitation Action*

The Limitation Act of 1851, now cited as 46 U.S.C. § 30529, limits a vessel owner's liability to the value of their interest in the vessel. However, Section 30529(a) requires that "[t]he owner of a vessel . . . bring a civil action in a district court of the United States for limitation of liability . . . within 6 months after a claimant gives the owner written notice of a claim."[70] "A written notice of claim sufficient to trigger the filing-period must reveal a 'reasonable possibility' that the claim is subject to such limitation."[71] Whether a written notice reveals a "reasonable possibility" a claim will exceed the value of the interest the limitation petitioner has in a vessel requires courts to engage in a "fact-intensive inquiry into the circumstances of the case."[72] Two inquires must be conducted: "(1) whether the writing communicates the *reasonable possibility* of a claim, and (2) whether it communicates the *reasonable possibility* of damages in excess of the vessel's value."[73]

---

[68] *Little*, 37 F.3d at 1075 (internal citations and quotation marks omitted).

[69] *Morris*, 144 F.3d at 380.

[70] 46 U.S.C. § 30529(a).

[71] *Billiot v. Dolphin Services, Inc.*, 225 F.3d 515, 517 (5th Cir. 2000) (internal quotations and citation omitted).

[72] *In re Eckstein Marine Service L.L.C.*, 672 F.3d 310, 317 (5th Cir. 2012) (impliedly overruled on other grounds by *In re Bonvillian Marine Serv., Inc.*, 19 F.4th (5th Cir. 2021)). *In re Bonvillian* only overruled *In re Eckstein* as far as the *In re Eckstein* Court held Congress's six-month time bar was a jurisdictional rule, which, if violated, stripped a court of its subject matter jurisdiction. *In re Eckstein*, 672 F.3d at 315. The *In re Bonvillian* Court reversed *In re Eckstein* on that narrow question, holding the six-month time bar is non-jurisdictional and has no bearing on subject matter jurisdiction. *In re Bonvillian*, 19 F.4th at 793–94.

[73] *In re The Complaint of RLB Contracting, Inc., as Owner of the Dredge Jonathan King Boyd its Engine, Tackle, Gear for Exoneration or Limitation of Liability*, 733 F.3d 596, 602 (5th Cir. 2014) (impliedly overruled on other grounds by *In re Bonvillian*, 19 F.4th 787) (emphasis in original).

Once a reasonable possibility is raised, "it becomes the vessel owner's responsibility to initiate a prompt investigation and determine whether to file a limitation action."[74] When there is uncertainty as to whether a claim will exceed the value of the vessel, the reasonable possibility standard places the "risk and burdens associated with that risk on the owner."[75] If "doubt exists as to the total amount of the claims or as to whether they will exceed the value of the ship the owner will not be excused from satisfying the statutory time bar since he may institute a limitation proceeding even when the total amount claimed is uncertain."[76]

## IV. Analysis

Neither party disputes that there was a reasonable possibility of a claim or, at some point, there existed a reasonable possibility of damages in this case exceeding Genesis's interest in the M/V ANACONDA. What the parties dispute is *when* that reasonable possibility existed. If, as Darrow argues,[77] a reasonable possibility existed before June 13, 2024, Genesis's limitation action filed on December 13, 2024, was untimely. If, as Genesis argues,[78] this reasonable possibility did not become apparent through written notice until August 2024, Genesis's limitation action was timely.

The reasonable possibility standard "is not toothless," but is "not particularly stringent."[79] Darrow is required only to have raised a reasonable possibility the damages sought would exceed

---

[74] *In re Eckstein*, 672 F.3d at 317.

[75] *Id.* at 318.

[76] *Id.* (internal quotations and citations omitted).

[77] Rec. Doc. 11-1 at 22–23.

[78] *See* Rec. Doc. 24 at 2.

[79] *In re Eckstein*, 672 F.3d at 317.

the value of the vessel.[80] Darrow was never required to state a particular value of damages sought.[81] Once Darrow raised this reasonable possibility, the burden then fell on Genesis to conduct an investigation and file a limitation action if necessary within six months, with the burden and risks associated with any uncertainty as to whether a claim would exceed the value of vessel squarely on the shoulders of the vessel owner, Genesis.[82] "In other words, if doubt exists as to the total amount of the claims or as to whether they will exceed the value of the ship the owner will not be excused from satisfying the statutory time bar since he may institute a limitation proceeding even when the total amount claimed is uncertain."[83] The Fifth Circuit has additionally noted this standard is not one of probability, but of possibility that a claim will result in damages above a vessel's worth.[84]

On December 23, 2021, Genesis was put on notice, through a Petition filed in state court, that Darrow was seeking recovery of the following categories of damages based on Genesis's alleged negligence and the unseaworthiness of the M/V ANACONDA:

> a. past, present, and future physical, mental, and emotional pain and suffering;
> b. past, present, and future loss of wages, fringe benefits, and wage earning capacity;
> c. past, present, and future disability;
> d. past, present, and future mental disability;
> e. past, present, and future medical expenses;
> f. past and future loss of found;
> g. past, present, and future loss of enjoyment of life; and
> h. all other special and general damages as will be shown at the trial of this

---

[80] *Id.*

[81] *Id.*

[82] *See id.*

[83] *Id.* at 318 (internal citations and quotations omitted).

[84] *In re RLB Contracting*, 773 F.3d at 603.

matter.[85]

The state court Petition was filed over two years before Genesis filed the limitation action in this Court.

Genesis answered the Petition on August 8, 2022. Before the Answer was even filed, Genesis admits it knew that Darrow, in Dr. Patterson's opinion, suffered a "massive disc herniation which extended caudad from disc space causing severe central canal stenosis," and that Dr. Patterson recommended immediate surgery.[86] Genesis was additionally aware Darrow was evaluated by neurosurgeon Dr. Donald Dietze for "ongoing pain bilaterally to the lateral hip, groin, knee, right thigh, lower leg, ankle, and foot and due to foot drop causing him to fall and numbness causing him to urinate on himself."[87] Genesis acknowledges Dr. Dietze recommended lumbar fusion[88] and that it occur immediately owing to the "significant risk of falling, developing cauda aquinia syndrome or bilateral leg paralysis with loss of bowel, bladder, and sexual function." [89] Darrow received this surgery on October 19, 2021.[90] Genesis furthermore admits it knew Dr. Andrew Todd's opinion that Darrow's injuries were "causally related to the workplace incident and that all prior surgeries were medically necessary given Darrow's 'significant pathology.'"[91] Genesis possessed all of this knowledge after Darrow filed his state court Petition and before Genesis filed its Answer.

---

[85] Rec. Doc. 11-23 at 3.

[86] Rec. Doc. 11-2 at 2. Genesis admits this fact in Rec. Doc. 24-15 at 1.

[87] Rec. Doc. 11-2 at 2. Genesis admits this fact in Rec. Doc 24-15 at 2.

[88] Rec. Doc. 11-2 at 2. Genesis admits this fact in Rec. Doc. 24-15 at 2.

[89] Rec. Doc. 11-2 at 3. Genesis admits this fact in Rec. Doc. 24-15 at 3.

[90] Rec. Doc. 11-2 at 3. Genesis admits this fact in Rec. Doc. 24-15 at 3.

[91] Rec. Doc. 11-2 at 3. Genesis admits this fact in Rec. Doc. 24-15 at 3.

With knowledge of the above facts, Genesis concedes it filed an Answer asserting the following on August 8, 2022:

> [T]he amount of damages sued for in the Petition herein greatly exceeds the amount for value of Genesis's interests in the M/V ANACONDA and her freight then pending, if any; Genesis accordingly invokes the benefits of the provisions of the Revised Status of the United States of America and the acts amendatory thereof and supplemental thereto in limitation of the liability of shipowners.[92]

The parties debate whether the above is a "judicial admission," which would have the effect of binding Genesis to this fact and withdrawing it from contention.[93] But whether the above statement from Genesis is a judicial admission is of no consequence for the purposes of resolving this motion.

Whether Darrow's claims amount to over $12.5 million need not be objectively true and withdrawn from contention for the six-month time bar to have begun. There must simply have existed a "reasonable possibility," through written notice, that a claim or group of claims could exceed the vessel's value for the time-period to start.[94] A finding of a reasonable possibility does not require a judicial admission that would put the issue out of contention. Genesis's statement in the Answer, that the amount of damages claimed by Darrow "greatly exceeds the amount for value of Genesis's interests in the M/V ANACONDA and her freight pending[,]"[95] coupled with Genesis's undisputed knowledge of the serious and developing extent of Darrow's injuries and

---

[92] Rec. Doc. 11-2 at 3–4. Genesis admits this fact in Rec. Doc. 24-15 at 3.

[93] *See Martinez v. Bally's La., Inc.*, 244 F.3d 474, 476 (5th Cir. 2001) (explaining that a "judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them . . . . [i]t has the effect of withdrawing a fact from contention.").

[94] *Billiot v. Dolphin Services, Inc.*, 225 F.3d 515, 517 (5th Cir. 2000) (internal quotations and citation omitted).

[95] Rec. Doc. 11-27 at 4

15

required care, satisfies the "not particularly stringent"[96] standard of demonstrating a "reasonable possibility" Darrow's damages exceeded the value of Genesis's interest in the M/V ANACONDA. This was true in August of 2022 when Genesis filed its Answer.

Even if this Court were to assume the evidence provided by Darrow and the statement from Genesis still left room for doubt on the question of the value of damages in August of 2022, it was still Genesis's duty to file a timely limitation action. As the Fifth Circuit held, if "doubt exists as to the total amount of the claims or as to whether they will exceed the value of the ship the owner will not be excused from satisfying the statutory time bar since he may institute a limitation proceeding even when the total amount claimed is uncertain."[97] Considering this burden on Genesis, it cannot have it both ways—stating in August 2022, in light of the evidence, there was a *definite* possibility Darrow's damages greatly exceeded the interest Genesis had in the M/V ANACONDA, but now stating there was no *reasonable* possibility until June 2024.

Moreover, additional facts occurred after the Answer was filed in August 2022, and before June of 2024, supporting a finding of a reasonable possibility Darrow's damages would exceed $12.5 million and thus triggering the six-month window for Genesis to file a limitation action. Darrow's condition, and consequently, what Darrow could reasonably be awarded through damages, only worsened between August 2022 and the beginning of 2024. On April 3, 2023, Genesis admits it was aware of Dr. Andrew Todd's supplemental report outlining Darrow's ongoing back and leg symptoms resulting from severe nerve damage and the effects of Darrow's ongoing treatments.[98] Genesis further confirms it received Dr. Dietze's report on August 1, 2023,

---

[96] *In re Eckstein*, 672 F.3d at 317.

[97] *Id.* (internal quotations and citations omitted).

[98] Rec. Doc. 11-2 at 4. Genesis admitted receiving this report in Rec. Doc. 24-15 at 4.

stating Dr. Dietze's opinion that Darrow was *permanently disabled* due to "failed back surgery syndrome," rendering Darrow unable to return to work.[99] Genesis was also aware Darrow underwent another surgery in September 2023, where Dr. Jolly surgically implanted two lead trial spinal cord simulators, with surgical implantation of permanent spinal cord simulators in February 2024.[100] In January 2024, Genesis admits it was made aware that Darrow's experts estimated Darrow's loss of wages at approximately $3.5 million and his future medical expenses were in the range of $1.7 million.[101] These damages, totaling over $5 million, only reflect damages from loss of wages and medical expenses.

In the state court Petition, Darrow additionally alleged entitlement to damages for past, present, and future physical, mental, and emotional pain and suffering and disability, as well as loss of enjoyment of life.[102] Considering Genesis admitted it knew in August 2023 Darrow was potentially permanently disabled,[103] Genesis possessed information almost a full year prior to June 2024 that calculation of these "noneconomic" damages could contemplate the rest of Darrow's life. While that information does not put the issue beyond doubt Darrow's damages could exceed $12.5 million, it must be weighed with Genesis's own assertion that the value of damages was above $12.5 million in August 2022 as well as the growing evidence of Darrow's injuries. This Court is convinced these additional facts put to rest the question of whether there existed written notice of a reasonable possibility Darrow's damages could exceed $12.5 million

---

[99] Rec. Doc. 11-2 at 5. Genesis admits this fact in Rec. Doc. 24-15 at 5.

[100] Rec. Doc. 11-2 at 5, 6. Genesis admits this fact in Rec. Doc 24-15 at 5, 6.

[101] Genesis admits these facts in Rec. Doc. 24-15 at 6.

[102] Rec. Doc. 11-23 at 3.

[103] Genesis admits this fact in Rec. Doc. 24-15 at 5.

17

enough to put the burden on Genesis to file a limitation action before December 13, 2024.

Even with these facts, Genesis claims it only knew of a reasonable possibility of the damages exceeding $12.5 million when Darrow expressly demanded a $22 million settlement.[104] This argument fails. As discussed, Fifth Circuit caselaw makes clear it was Genesis's burden from the time the state court Petition was filed to resolve any doubt as to the reasonable possibility of damages exceeding $12.5 million by filing a limitation action.[105] Genesis seems to want to place a burden on Darrow to have explicitly claimed a value of damages above the value of the vessel for the limitation action time limit to begin. This burden does not exist.

Lastly, a finding there existed a reasonable possibility of Darrow's claims exceeding $12.5 million before June 13, 2024, is supported by the purpose of the Limitation Liability Act. In *Vatican Shrimp*, the Fifth Circuit explained, prior to the six-month time-bar amendment, "a vessel owner could delay filing . . . [action] in federal court until the eve of the state court trial."[106] *Vatican Shrimp* made clear the six-month time-bar was enacted "[i]n response to the problems this practice caused," and that the time-bar was intended to force "vessel owner[s] to act more promptly."[107] Ultimately, the six-month time-bar's purpose was to eliminate the situation currently before this Court—a vessel owner filing a limitation action on the eve of state court trial. Genesis filed its limitation action on December 13, 2024,[108] just three months before state court trial set for March 25, 2025. Again, Genesis claims it was only put on notice Darrow's

---

[104] Rec. Doc. 24 at 9.

[105] *In re Eckstein*, 672 F.3d at 317.

[106] *Vatican Shrimp*, 820 F.2d at 682.

[107] *Id.* (internal citations omitted).

[108] Rec. Doc. 1.

claims could exceed $12.5 million when Darrow demanded Genesis pay $20 million to settle the case.[109] But this ignores Genesis's clear statement in its Answer, as well as the mounting evidence of Darrow's injuries by early 2024, of the reasonable possibility that Darrow's claim could exceed $12.5 million. In the end, the Limitation Act makes it Genesis's duty to act promptly in filing a limitation action even in the face of doubt of total damages, and Genesis failed to fulfill this duty. The undisputed evidence in the record demonstrates that this limitation action was not timely filed.

---

[109] Rec. Doc. 24 at 2.

## V. Conclusion

When reviewing the facts in this case, it is clear there existed written notice of the reasonable possibility Darrow's claim could exceed $12.5 million before June 13, 2024, something Genesis even admitted in the Answers filed in state court in August 2022.[110] Once the reasonable possibility was raised, it was then Genesis's duty to timely file a limitation action.[111] Considering Genesis did not file a limitation action until December 13, 2024, and written notice of the claim exceeding $12.5 million existed before June 13, 2024, the undisputed evidence in the record demonstrates Genesis's limitation action was not timely filed.

Accordingly,

**IT IS HEREBY ORDERED** that Darrow's Motion for Summary Judgment on the issue of timeliness of the limitation complaint[112] is **GRANTED.**

NEW ORLEANS, LOUISIANA, this 27th day of March, 2025.

_____
**NANNETTE JOLIVETTE BROWN
CHIEF JUDGE
UNITED STATES DISTRICT COURT**

---

[110] Rec. Doc. 11-27 at 4.

[111] *In re Eckstein*, 672 F.3d at 317.

[112] Rec. Doc. 11.